UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RHONDA K. SUNDERMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,<br><br>    Defendant. | 4:16-CV-04003-KES<br><br><br>MEMORANDUM OPINION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER |

  Plaintiff, Rhonda K. Sunderman, seeks review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits (SSDI) under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income (SSI) under Title XVI of that Act, 42 U.S.C. § 1382. The Commissioner opposes the motion and urges the court to affirm the denial of benefits. For the following reasons, the court reverses the decision of the Commissioner.

## **PROCEDURAL HISTORY**

  Sunderman filed an application for SSDI and SSI on November 8, 2012, alleging disability since January 1, 2012.[1] AR 212. Sunderman alleged that she suffered from fibromyalgia, depression, anxiety, back issues, and stomach

---

[1] Sunderman later amended her disability onset day to November 5, 2012. AR 334.

issues. AR 287. The Commissioner denied Sunderman's claim on February 11, 2013, and upon reconsideration on June 24, 2013. AR 155, 160, 163. Sunderman then requested an administrative hearing, AR 168, and appeared with counsel before Administrative Law Judge (ALJ) Robert Maxwell on April 24, 2014. *See* AR 75 (transcript of hearing). On July 25, 2014, the ALJ issued an opinion affirming the denial of benefits. AR 36-55. The Appeals Council denied Sunderman's request for review on December 15, 2015.[2] AR 1-7. Thus, Sunderman's appeal of the commissioner's final decision is properly before the court under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Sunderman was born on July 3, 1960. AR 79, 282. At the time of her hearing before the ALJ, Sunderman was 53 years old. AR 79. Although she did not graduate from high school, Sunderman obtained her GED in 1982. AR 80, 288. While Sunderman's complete employment history is unknown, she reported working a number of jobs between 1994 and 2012 including jobs as a customer service representative, catalog order clerk, survey taker, and student loan processor. AR 293. Sunderman explained during her administrative hearing that she left her most recent job as a credit card customer service representative in November 2012 because she was unable to complete her assigned tasks due to constant pain. AR 82, 95-97. Sunderman claims she has been unable to work since that time. *See* AR 80, 334.

---

[2] The Appeals Council received additional evidence from Sunderman—which was not presented to the ALJ—that is part of the administrative record for this matter. AR 6.

2

Sunderman's medical history features numerous consultations with different physicians, psychiatrists and counselors between 2012 and 2014. *See* AR 343-71 (treatment records from Falls Community Health between January 30, 2012, and July 3, 2012); AR 372-88 (treatment records from Southeastern Behavioral Healthcare between January 24, 2012, and August 2, 2012); AR 405-11 (treatment records from Falls Community Health between November 28, 2012, and April 8, 2013); AR 412-32 (treatment records from Falls Community Health between April 24, 2013, and July 16, 2013); AR 433-44 (chart notes from Avera Gastroenterology between February 25, 2014, and February 28, 2014); AR 445-88 (patient records from Sanford USD Medical Center between December 16, 2013, and December 18, 2013); AR 489-97 (patient records from Sanford Cardiovascular Institute from December 23, 2013); AR 501-24 (therapy notes from Avera Medical Group between November 12, 2013, and April 15, 2014); AR 529-54 (treatment records from between November 4, 2011, and April 9, 2014); AR 555-62 (treatment records from Avera Medical Group between January 21, 2014, and July 1, 2014); AR 563-73 (treatment records from Avera Medical Group between May 9, 2014, and July 9, 2014); AR 17-21 (treatment records from Avera Medical Group on September 9, 2014); AR 22-29 (treatment records from Avera Medical Group on September 2, 2014).

Disability reports and Sunderman's medical records also reveal that Sunderman had a rigorous drug regimen between 2012 and 2014. Specifically, Sunderman's medical providers prescribed the following prescription

3

medications to her between 2012 and 2014: clonazepam, lorazepam, and celexa to treat anxiety (AR 289, 313, 347, 357); zocor to treat high cholesterol (AR 548-49); citalopram, prozac, paroxetine, cymbalta, trazodone, and abilify to treat depression (AR 289, 357, 360, 548-49); gabapentin/neurotin and lyrica to treat fibromyalgia (AR 313, 329, 566); accupril, lisinopril, and benazepril to treat high blood pressure (AR 329, 411, 542); naproxen to treat inflammation and pain (AR 407); and aciphex, ranitidine, protonix, and zofran to treat stomach issues and nausea (AR 313, 360, 548-49).

## ADMINISTRATIVE HEARING

During the April 24, 2014, administrative hearing, the ALJ heard testimony from two witnesses: Sunderman and Warren Haginson, a vocational expert. As a vocational expert, Haginson is utilized by the Social Security Administration to help determine whether the claimant possesses the ability to maintain full-time employment in the local and national economy.

Sunderman, who was represented by counsel at the hearing,[3] testified regarding her past work history doing customer service type work. AR 80. Sunderman also explained that she quit her most recent job in November 2012 due to the constant pain she felt in her shoulders, arm, back, and hands while at work. AR 82. Sunderman also testified that after about ten or fifteen minutes of keyboarding, her arms and hands would go numb. AR 85. This pain

---

[3] After the ALJ issued his decision, Sunderman ended her relationship with her attorney and hired her current attorney to conduct the remainder of her appeals process. *See* AR 34-35.

would last for about thirty minutes before Sunderman was able to get back to work. *Id.*

Sunderman also described how her diagnoses of fibromyalgia and anxiety affected her daily life. At times, the pain from her fibromyalgia would spread through her whole body and make her "feel like a Gumby." AR 86. Due to this, Sunderman stated that her pain would make it feel "like I'm not going to be able to walk." *Id.* Sunderman also explained that she was no longer able to cross-stitch as much as she used to and could only cross-stich for fifteen or twenty minutes before her arms would go numb. AR 102-03. Sunderman said that she was no longer able to cook large meals for her family and instead only prepared meals requiring easy preparation like TV dinners. AR 104. Sunderman further testified that her anxiety made even simple things, such as grocery shopping, very difficult.[4] AR 95.

When questioned by the ALJ, Sunderman testified about her medical diagnoses and treatment. AR 98-102. The ALJ specifically questioned Sunderman about her diagnosis of fibromyalgia and her mental health treatment. *Id.* The ALJ and Sunderman had the following exchange discussing Sunderman's mental health treatment:

> Q: Are you under the care of any mental health professional at the Avera Free Clinic?
>
> A: Yes.

---

[4] Specifically Sunderman testified that she became so distraught after not being able to find her EBT card when going to pay for groceries at Walmart that she broke down and started bawling in front of others while in the store. AR 95.

> Q: And who's that?
>
> A: What's her name, I'm sorry. Oh, I didn't even write it down. It's Dr. Adam something. I'm not sure.
>
> Q: Is it a hyphenated name?
>
> A: Yep.
>
> Q: If it turns out to be Chester-Adams –
>
> A: Yep.
>
> Q: Does that sound familiar to you?
>
> A: Yep.
>
> Q: How many times have you seen [Dr. Chester-Adams]?
>
> A: I actually have just started seeing her so I've seen her three times.
>
> . . .
>
> Q: And has [Dr. Chester-Adams] put any limitations on your activities form a mental health standpoint, about working or not working or particular work environment?
>
> A: Just to stay away from whatever was causing me stress and anxiety. . . .

AR 101-02.

Haginson, the vocational expert, testified about Sunderman's potential employment options. AR 107-09. Specifically, the ALJ questioned Haginson using a hypothetical created from the state agency's assessment of Sunderman. *See* AR 140-41 (Exhibit 3A). Under the ALJ's hypothetical, Haginson confirmed that someone with those abilities could perform all of the past work performed by Sunderman. AR 108.

**ALJ DECISION**

Employing the five-step analysis associated with an application for social security benefits, the ALJ denied Sunderman's claim on July 25, 2014. AR 35. In Step One, the ALJ found that Sunderman had not engaged in substantial gainful activity since November 5, 2012, the amended onset date. AR 41. In Step Two, the ALJ found that Sunderman suffers from the following severe impairments: fibromyalgia and obesity. *Id.* The ALJ also found at Step Two that Sunderman had two medically determinable mental impairments: depression and anxiety. AR 42. The ALJ went on to conclude, however, that because these impairments did not cause more than "minimal limitation in [Sunderman's] ability to perform basic mental work activities," that the medically determinable impairments of anxiety and depression were "nonsevere." *Id.*

In Step Three, the ALJ found that Sunderman does not have any impairment, or combination of impairments, that meets or equals the severity required for a finding of disability under 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 45. Between Steps Three and Four the ALJ calculated Sunderman's residual functioning capacity (RFC) and concluded that Sunderman had the RFC:

> to perform a range of light work as defined in [20 C.F.R. §§] 404.1567(b) and 416.967(b). [Sunderman] is able to occasionally lift and/or carry 20 pounds and frequently 10 pounds. [Sunderman] can stand, walk or sit (with normal breaks) about six hours each in an 8-hour day. [Sunderman's] push/pull abilities are unlimited with the resistance as stated in her lifting/carrying abilities. From a postural standpoint, [Sunderman] can occasionally climb, perform unlimited balancing and frequently stoop, kneel, crouch or crawl. [Sunderman] has no manipulative, visual, communicative or environmental limitations.

7

AR 46. Because of the ALJ's finding regarding Sunderman's RFC, the ALJ found in Step Four that Sunderman was capable of performing all of her past relevant work. AR 49. Thus, the ALJ concluded that Sunderman was not disabled. AR 50.

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). " 'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the conclusion.' " *Teague*, 638 F.3d at 614 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). When reviewing the record, "the court 'must consider both evidence that supports and evidence that detracts from the Commissioner's decision.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of

an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008)).

**THE FIVE STEP PROCEDURE FOR DISABILITY DETERMINATIONS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(3)(A). "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). An ALJ must apply a five-step procedure when determining if an applicant is disabled. *Smith v. Shalala*, 987 F.2d. 1371, 1373 (8th Cir. 1993). The steps are as follows:

**Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b).

**Step Two**: Determine whether the applicant has an impairment or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c).

**Step Three**: Determine whether any of the severe impairments identified in Step Two match the listing in Appendix 1. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d).

**Step Four**: Considering the applicant's RFC, determine whether the applicant can perform any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(e).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy that the applicant can perform. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

## DISCUSSION

Sunderman urges the court to reverse the ALJ's decisions for the following reasons: (1) the ALJ failed to properly identify Sunderman's severe mental impairments; (2) the ALJ failed to properly evaluate Sunderman's fibromyalgia; (3) the ALJ's RFC determination is not supported by substantial evidence; and (4) the ALJ failed to properly evaluate third party statements from Sunderman's mother. Docket 11 at 1. Additionally, Sunderman requests that the court direct the Social Security Administration to award benefits. *Id.* at 35.

**I.   Step Two**

In Step Two, the Commissioner must determine whether the claimant has a severe impairment, that is, "one that significantly limits the claimant's physical or mental ability to perform basic work activities." *Baker v. Apfel*, 159 F.3d 1140, 1143 (8th Cir. 1998); *see also* 20 C.F.R. § 404.1520(c); 20 C.F.R.

§ 416.920(c). An impairment is not severe "if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). "It is the claimant's burden to establish that [her] impairment or combination of impairments are severe." *Id.*

At Step Two, the ALJ determined that Sunderman's only severe impairments were fibromyalgia and obesity. AR 41. Although the ALJ found that depression and anxiety were medically determinable impairments, AR 42, the ALJ concluded that depression and anxiety were nonsevere impairments because the impairments only caused "minimal limitation in [Sunderman's] ability to perform basic mental work activities." *Id.* Sunderman alleges that this conclusion by the ALJ was incorrect and that the ALJ would have reached the correct conclusion had the ALJ "fully and fairly develop[ed] the record regarding [Sunderman's] mental impairments before determining that [her medically determinable impairments of depression and anxiety] were not severe." Docket 11 at 21.

### A. An ALJ's duty to fully and fairly develop the record.

In the context of non-adversarial social security hearings, an " 'ALJ bears a responsibility to develop the record fairly and fully, and independent of the claimant's burden to press [her] case.' " *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). But such a responsibility only stretches so far. *Id.* (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). An ALJ's burden to seek additional

11

evidence normally exists only where "a crucial issue is undeveloped." *Stormo*, 377 F.3d at 806. Thus, an " 'ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.' " *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (quoting *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994)). In developing a reasonably complete record, the Eighth Circuit has observed that "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

### B. Did the ALJ fully develop the record here?

Sunderman argues that the ALJ failed to fully develop her administrative record. Specifically she cites to 20 C.F.R. § 404.1512(d), which requires the Commissioner to develop the claimant's "complete medical history for at least the 12 months preceding the month [the claimant files their application]. . . ." *See also* 20 C.F.R § 416.912(d) (same). Sunderman alleges that the ALJ and the Commissioner failed to develop the record by failing to obtain Sunderman's treatment records from her sessions with Dr. Chester-Adams. Docket 11 at 21. According to Sunderman, because she testified at her administrative hearing about being treated by Dr. Chester-Adams and other medical records in the file reference Dr. Chester-Adams, the Commissioner and the ALJ were required to attempt to locate those treatment records. *See id.*

The Commissioner responded to this argument by citing *Whitman*, 762 F.3d at 707, and stating Sunderman failed to meet her obligation to develop the record. Docket 13 at 22 n.3. The Commissioner also cites to 20 C.F.R.

§ 404.1512(a), which places the ultimate burden to prove that a claimant is disabled on the claimant. *See also* 20 C.F.R. § 416.912(a). The Commissioner further argues that Sunderman's argument should be given little weight here because both Sunderman and Sunderman's counsel failed to provide the Dr. Chester-Adams' treatment records to the ALJ. Docket 13 at 22 n.3 (citing AR 78 and AR 109-110 (holding administrative record open to afford counsel additional time to procure remaining records from providers who had not yet responded to document request)); *see also* AR 528 (April 30, 2014, letter from Sunderman's counsel stating that the administrative record can be closed).

"[R]eversal due to failure to develop the record is . . . warranted where such failure is unfair or prejudicial." *Shannon*, 54 F.3d at 488. In *Snead*, 360 F.3d at 839, the Eighth Circuit reversed and remanded a case for fuller development of the record where additional treatment evidence from the claimant's treating physician might have altered the ALJ's opinion regarding the claimant's alleged disability. *Id.* (citing *Shannon*, 54 F.3d at 488) ("Because this evidence might have altered the outcome of the disability determination, the ALJ's failure to elicit it prejudiced Snead in his pursuit of benefits.").

As in *Snead*, 360 F.3d at 839, reversal is appropriate here for fuller development of Sunderman's treatment records. A review of the treatment records of Dr. Chester-Adams might alter the ALJ's opinion that Sunderman's medically determinable mental impairments of depression and anxiety were nonsevere because the record document that Sunderman received treatment for depression and anxiety. *See* AR 22-29. The ALJ had questioned Sunderman

13

about her mental treatment at the "Avera free clinic" during the administrative hearing and specifically referenced Sunderman's doctor (Dr. Chester-Adams) by name.[5] AR 101-02.

The court finds that because Dr. Chester-Adams' treatment records of Sunderman had the potential to alter the ALJ's disability determination, the ALJ's failure to obtain these records prejudiced Sunderman and a reversal for consideration of these records is proper. *See Snead*, 360 F.3d at 839. On remand the ALJ should consider Sunderman's treatment records that were made part of the administrative record by the Appeals Council and any other records produced by Sunderman and her counsel or obtained by the ALJ regarding Sunderman's mental health treatment.[6]

## II. Step Three

In Step Three, the ALJ must consider whether the claimant's severe impairment or impairments are such that a finding of disability is appropriate. *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii). If the severe impairments, when reviewed individually or in combination, satisfy the requirements of a listing in Appendix 1 of Subpart P in 20 C.F.R. Part 404 (Appendix 1), then "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

---

[5] Some of Dr. Chester-Adams' treatment records of Sunderman, although not presented to the ALJ, were considered by the Appeals Council and thus became part of the administrative record for this case. AR 6. As such, a remand is warranted so the ALJ can consider whether these treatment records impact the determination at Step Two.

[6] As the court's opinion in Section II, *infra*, makes clear, additional independent grounds exist for reversing the Commissioner's decision.

At Step Three, the ALJ found that Sunderman's severe impairments of fibromyalgia and obesity did not individually or in combination satisfy the requirements of a listing in Appendix 1. AR 45. In reaching this decision, the ALJ "specifically considered listing 14.06."[7] *Id.*

Sunderman argues that the ALJ failed to review her impairments as required by SSR 12-2p, which pertains to fibromyalgia. Docket 11 at 25. This failure, according to Sunderman, leaves the court unable to properly review the ALJ's decision at Step Three. *Id.* at 28. The Commissioner does not deny that the ALJ failed to consider SSR 12-2p and listing 14.09 in rendering his decision. In fact, the Commissioner argues that the error is harmless. Docket 13 at 27 (citing *Henderson v. Sullivan*, 930 F.3d 19, 21 (8th Cir. 1991)).[8] Further, the Commissioner argues that this court should affirm the ALJ's decision because Sunderman has failed to show that her conditions meet or equal the criteria of any listing contained in Appendix 1. *Id.*

The purpose of SSR 12-2p is to provide guidance on how to "develop evidence to establish that a person has a medically determinable impairment of fibromyalgia. . . ." SSR 12-2p, 2012 WL 3104869 at *5 (July 25, 2012). Regarding the analysis needed at Step Three, SSR 12-2p states:

---

[7] Listing 14.06 addresses undifferentiated and mixed connective tissue disease. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, listing 14.06.

[8] The court finds the Commissioner's argument relating to harmless error unpersuasive. In *Henderson*, 930 F.3d at 21, the Eighth Circuit found that an ALJ's failure to mention a binding regulation is only harmless where the ALJ "substantially complied with the correct legal standard." Because the ALJ applied an incorrect standard here, the ALJ's error cannot be harmless.

> At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). [Fibromyalgia] cannot meet a listing in appendix 1 because [it] is not a listed impairment. At step 3, therefore, we determine whether the [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

*Id.*

It is well settled in the Eighth Circuit that agencies are required to follow their own binding regulations and that the failure to follow an agency's own regulations is "a reversible abuse of discretion." *Carter v. Sullivan*, 909 F.2d 1201, 1202 (8th Cir. 1990) (*per curiam*) (holding failure of Secretary to follow binding SSR 83-10 was an abuse of discretion); *see also* 20 C.F.R. § 402.35(b)(1) (stating that Social Security Rulings are "binding on all components of the Social Security Administration"). Thus, while the Commissioner asserts correctly that Sunderman bears the burden of proving that her severe impairments are the medical equivalent of a listing in Appendix 1, the ALJ also carries the responsibility of reviewing Sunderman's severe impairments for medical equivalence under the appropriate listing and agency regulations.

The entirety of the ALJ's analysis at Step Three is one paragraph. *See* AR 45. And while in this paragraph the ALJ states that he has "specifically considered listing 14.06," AR 45, the ALJ's conclusory analysis makes it "practically impossible for a reviewing court to analyze" whether the ALJ's reasoning regarding medical equivalence is sound. *See Miller v. Colvin*, 114 F.

16

Supp. 3d. 741, 775 (D.S.D. 2015). In *Jockish v. Colvin,* No. 15-5011-KES, 2016 WL 1181680 (D.S.D. March 25, 2016), this court held that an ALJ's failure to follow SSR 12-2p and listing 14.09D constituted a reversible error. *Jockish,* 2016 WL 1181680, at *7. Because of the reversible error, this court remanded the case back to the ALJ for consideration of the medical evidence in light of SSR 12-2p and listing 14.09D. The same result is appropriate here.

Because the court remands this case for further review, it declines to address the remaining issues raised by Sunderman.  The record contains medical and psychiatric records, as well as other evidence, that were submitted to the Social Security Administration after the ALJ's decision was issued. *See* AR 6. In light of this new evidence and this court's instructions relating to Steps Two and Three, it is inappropriate to render judgment on the ALJ's analysis pertaining to Sunderman's RFC and whether the ALJ evaluated third party statements from Sunderman's mother. On remand, the court instructs the ALJ to review the medical evidence in its entirety and to make new findings throughout the disability analysis. In making this decision, the court denies Sunderman's request that the court award benefits without remanding the case for further review.

## CONCLUSION AND ORDER

The court finds that the ALJ erred by failing to seek to obtain Sunderman's treatment records from Dr. Chester-Adams after questioning Sunderman on that treatment relationship. The court also finds that the ALJ failed to properly apply SSR 12-2p to determine whether Sunderman's

17

fibromyalgia constitutes the medical equivalent of a listing in Appendix 1, Subpart P of 20 C.F.R. Part 404. Thus,

IT IS ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further review consistent with this opinion.

DATED February 3, 2017.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE